**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**

| | |
|---|---|
| CARLOS THURMAN, | |
| Plaintiff, | |
| v. | |
| COOKIE CREWS, in her official and individual capacity as Commissioner of the Kentucky Department of Corrections; ANNA VALENTINE, in her official capacity as Warden of Northpoint Training Center; BRAD ADAMS, in his official and individual capacity as Warden of Northpoint Training Center; SERGEANT RECTOR, in his official and individual capacity as an employee of Northpoint Training Center; SCOTT GORDON, in his official and individual capacity as a Supervisor at Northpoint Training Center; JESSICA PAYTON, in her official and individual capacity as Warden's Designee at Northpoint Training Center; and JENNIFER TRACY, in her official and individual capacity as Classification Branch Manager at the Kentucky Department of Corrections, | Case No. COMPLAINT AND DEMAND FOR JURY TRIAL |
| Defendants. | |

## COMPLAINT

## INTRODUCTION

1.     This Complaint alleges Defendants Cookie Crews, Anna Valentine, Brad Adams,

Sergeant Rector, Scott Gordon, Jessica Payton, and Jennifer Tracy (collectively, "Defendants")

violated two statutes designed to protect Plaintiff Carlos Thurman's ("Plaintiff's" or "Mr.

Thurman's") religious liberty and expression: the Religious Land Use and Institutionalized

Persons Act (RLUIPA) and Kentucky's Religious Freedom Restoration Act (KRFRA). It further

alleges that Defendants infringed on Mr. Thurman's First Amendment rights, specifically, that

1

Defendants retaliated against Plaintiff for exercising his constitutionally-protected First Amendment rights.

**JURISDICTION AND VENUE**

2.     This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343.

3.     Plaintiff's causes of action are authorized by 28 U.S.C. §§ 2201 and 2202, Rule 57 of the Federal Rules of Civil Procedure, 42 U.S.C. § 1983, 42 U.S.C. §§ 2000cc-1 and 2000cc-2(a), KRS 446.070, KRS 446.350, and the general legal and equitable powers of this Court.

4.     Venue is appropriate under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

**PLAINTIFF**

5.     Plaintiff Carlos Thurman is an individual currently incarcerated at the Eastern Kentucky Correctional Complex in West Liberty, KY, where he has been since April 30, 2021. Prior to April 30, 2021, Mr. Thurman was incarcerated at Northpoint Training Center in Burgin, KY. He has been incarcerated in the Kentucky Department of Corrections since 1992. He is a practicing Rastafarian.

**DEFENDANTS**

6.     Defendant Cookie Crews is the Commissioner of the Kentucky Department of Corrections. In that role, she is the administrator over the operations of KY DOC's Adult Institutions, including those where Plaintiff is currently and has been held. Defendant Crews is sued in her official and individual capacity.

7.     Defendant Anna Valentine is the current Warden of Northpoint Training Center in Burgin, KY. In that role, she is the administrator over the daily operations of the prison. She

receives and hears appeals to grievances filed by incarcerated individuals, and considers transfer requests. Defendant Valentine is sued in her official capacity.

8.      Defendant Brad Adams was the Warden of Northpoint Training Center in Burgin, KY, at the time the events in this Complaint began. In that role, he was the administrator over the daily operations of the prison. Defendant Adams issued the "Searchable Hair" policy on February 23, 2021. Defendant Adams is sued in his official and individual capacity.

9.      Defendant Mendalyn Cochran was Acting Warden of Northpoint Training Center in Burgin, KY, in early 2021. In that role, she was the administrator over the daily operations of the prison. Defendant Cochran approved the retaliatory transfer of Mr. Thurman to a different facility. Defendant Cochran is sued in her official and individual capacity.

10.     Defendant Sergeant Rector is a correctional officer at Northpoint Training Center. On April 30, 2021, he was involved in the transfer of several incarcerated individuals, including Plaintiff, and ordered Plaintiff's hair to be cut. Defendant Rector is sued in his official and individual capacity.

11.     Defendant Scott Gordon was the Supervisor at Northpoint Training Center who, on April 9, 2021, approved Mr. Thurman's retaliatory transfer. Defendant Gordon is sued in his official and individual capacity.

12.     Defendant Jessica Payton was the Warden's Designee at Northpoint Training Center who, on April 29, 2021, approved Mr. Thurman's retaliatory transfer. Defendant Payton is sued in her official and individual capacity.

13.     Defendant Jennifer Tracy was the KY DOC's Classification Branch Manager who, on April 29, 2021, approved Mr. Thurman's retaliatory transfer. Defendant Payton is sued in her official and individual capacity.

## FACTUAL ALLEGATIONS

14.     At all relevant times, Defendants acted under color of state law.

*Mr. Thurman's Sincerely Held Religious Belief*

15.     Plaintiff Mr. Thurman has been incarcerated by the Kentucky Department of Corrections since 1992. From approximately September 19, 2020, to April 30, 2021, he was incarcerated at Northpoint Training Center in Burgin, KY.

16.     Mr. Thurman is a practicing Rastafarian. He has practiced this religion for approximately three years.

17.     Mr. Thurman learned about Rastafarianism through other incarcerated individuals and in particular, Rastafari elders with whom he interacted. His religious practice includes learning from, reading with, and praying with the elders and other practicing Rastafari individuals in prison.

18.     A tenet of Rastafarianism is the belief that adherents should wear their hair in dreadlocks, which draws on the language of Leviticus 21:5: "They shall not make baldness upon their head, neither shall they shave off the corner of their beard, nor make any cuttings in the flesh." This belief draws on and is influenced by the Nazirites and the Nazirite vows taken by Samson.

19.     Consistent with his Rastafarian beliefs, Mr. Thurman grew his hair in dreadlocks. Prior to April 30, 2021, he had worn dreadlocks for approximately two years.

20.     A photo taken in March 2021 depicts his dreadlocks at that time:



*Northpoint Training Center Policy*

21.     On February 23, 2021, then-Warden of Northpoint Training Center, Brad Adams, issued a memorandum to "All Concerned" with the subject "Searchable Hair." The memo read:

> Effective immediately, Inmates entering/exiting the Institution and/or assigned to Restrictive Housing Unit (RHU) must have searchable hair, regardless of length. Braids, corn rolls[sic], dreadlocks, etc. are not permitted if they are not searchable. Inmates shall be given the option to remove the braids, corn rolls[sic], dreadlocks, etc. for a reasonable amount time to do so (30 minutes). If the Inmate refuses to remove them, then the hair will be cut using a cell entry team, with video. This is a use of force and must be approved using the normal process.
>
> Inmates, who are currently assigned to RHU, shall not be permitted to have braids, corn rolls[sic], dreadlocks, etc. in their hair. If you discover that they have done so, the same process as above will be followed.

22.     While then-Warden Adams' memorandum was dated February 23, 2021, it was not posted and made available to incarcerated individuals until March 2, 2021.

23.     The same day that then-Warden Adams' memorandum was issued, wardens and administrators at Kentucky's adult correctional institutions received guidance from the DOC Ombudsman referencing litigation then-pending in the United States Court of Appeals for the Sixth Circuit involving the Ohio Department of Rehabilitation and Corrections' hair searching policy, informing these administrators that the KY DOC hair searching policy would be revised to "mirror closer [to] Ohio's policy on this subject matter."

*Northpoint Training Center Grievances*

24.     On March 5, 2021, Mr. Thurman, on behalf of himself and other incarcerated individuals, filed a group grievance, #21-55G, against the "Searchable Hair" policy, alleging that the policy was racially discriminatory and a violation of the First and Fourteenth Amendment. As part of the "Action Requested," Mr. Thurman specifically requested that he not be "retaliated against by means of searches and being transferred" for filing the grievance.

25.     On March 19, 2021, at the "Informal Resolution Stage," a prison official wrote "all inmate hair has to be made searchable prior to a transportation trip or assigned to RHU." Mr. Thurman appealed this to the Grievance Coordinator on March 23, 2021.

26.     On March 25, 2021, the Grievance Committee issued its Findings and Recommendations, writing, "We the grievance committee would like to make the recommendation that the word 'searchable' be defined for the inmate and staff knowledge."

27.     Two days later, on March 27, 2021, Mr. Thurman appealed the Grievance Committee's recommendation to the Warden. In this appeal, Mr. Thurman wrote that DOC had "failed to show that the cutting of braids, cornrows, and dreadlocks are the least-restrictive means. The DOC is clearly violating RLUIPA, and my Fourteenth Amend. Right to Equal Protection, my First Amend. and Eight Amend. Right."

28.     On April 7, 2021, then-Acting Warden Mendalyn Cochran issued her review of Grievance #21-55G, writing, "If an inmate is housed in RHU or is transported then the inmate's hair needs to be searchable. Staff have to be able to search the inmate's hair for contraband. No further action."

29.     Two days later, on April 9, 2021, Mr. Thurman filed a Grievance Appeal to DOC Commissioner Cookie Crews. Defendant Crews waived the response time for that Grievance Appeal. To date, Mr. Thurman has not received a response to this pending appeal.

30.     Simultaneously to grieving the "Searchable Hair" policy, Mr. Thurman and other individuals incarcerated at Northpoint Training Center noticed that the prison canteen stopped carrying certain products, specifically those made by Murray's, which were used by African American individuals to care for their natural hairstyles, including dreadlocks.

31.     On April 3, 2021, Mr. Thurman filed Grievance #21-86, arguing that the removal of Black hair care products from the canteen violated his Fourteenth and First Amendment rights, as well as RLUIPA.

32.     Responding to that grievance, the Grievance Committee wrote on April 29, 2021, "The committee recommends that it be reviewed to sell items for African American hair if not offering the Murray's products." That same day, Mr. Thurman indicated his intention to appeal the Committee's recommendation to the Warden; however, he was transferred from Northpoint the next day, rendering this grievance appeal moot.

*Mr. Thurman's Transfer*

33.     Unbeknownst to Mr. Thurman, on April 8, 2021, the day after she issued her decision on Grievance #21-55G, challenging the "Searchable Hair" policy, then-Acting Warden Mendalyn Cochran began the process of requesting to transfer Mr. Thurman to a different facility.

34. This transfer was approved by Scott Gordon, Supervisor, on April 9, 2021, and by Jessica Payton, Warden's Designee at Northpoint Training Center, and Jennifer Tracy, KY DOC Classification Branch Manager, on April 29, 2021.

35. Approximately seven months earlier, Mr. Thurman had requested, with the assistance and approval of certain Northpoint Training Center staff, a transfer to the Southeast State Correctional Complex, a new facility that was scheduled to open in September 2020. Due to his history of working as a grievance aide inside Kentucky's correctional facilities, Mr. Thurman had been asked if he would be willing to transfer to Southeast State Correctional Complex to help establish their grievance process, after which time he would be returned to Northpoint. Mr. Thurman agreed.

36. Although this request was approved by a designee of the Northpoint Training Center Warden, Shea Carlson, on October 12, 2020, it was denied by Defendant Tracy, Classification Branch Manager at the main KY DOC office in Frankfort, that same day, and Mr. Thurman remained at Northpoint until the events leading to this Complaint.

37. Indeed, in a Classification Report dated January 19, 2021, no institutional transfer was recommended for Mr. Thurman.

38. Nevertheless, at approximately 1:00 am in the morning of April 30, 2021, Mr. Thurman was awoken and told to pack his things because he was being transferred to another facility. This was the first he knew of the transfer.

39. When Mr. Thurman arrived at the administration office with his belongings packed, Defendant Rector informed him that his dreadlocks would need to be cut prior to his transfer.

40.     Notwithstanding that the "Searchable Hair" policy explicitly references hair being searched, at no point during the transfer process did Defendant Rector or any other prison official attempt to search Mr. Thurman's hair.

41.     Mr. Thurman objected, citing both his pending grievance against the "Searchable Hair" policy, and the fact that prison officials were not attempting to search his hair.

42.     Mr. Thurman's hair at that time was worn in short dreadlocks, as depicted in the photograph in paragraph 20, above. His dreadlocks were only 2-3 inches long, and about the width of a number 2 pencil. Nevertheless, prison officials did not attempt to search his hair before ordering that it be cut.

43.     Fearing further harassment or even physical retaliation, Mr. Thurman acquiesced to having his hair cut, but pursuant to the "Searchable Hair" policy, he asked that the forcible hair cutting be video recorded.

44.     Defendant Rector directed that a video recording be made, and directed another incarcerated individual to film the encounter. Mr. Thurman was told that this video would be added to his KOMS file.

45.     Once his dreadlocks were cut from his head, they were placed in a bag, which was added to Mr. Thurman's possessions and transferred with him to Eastern Kentucky Correctional Center.

46.     At no time did any prison official or administrator attempt to search the cut dreadlocks that were gathered in a bag and transferred with Mr. Thurman.

47.     That same day, several other individuals were also transferred from Northpoint Training Center to Eastern Kentucky Correctional Complex. Among them were two other African American individuals who also wore their hair in dreadlocks. Prison officials forcibly cut those

individuals' dreadlocks in the same manner that they removed Mr. Thurman's, without searching or attempting to search their dreadlocks.

48. At least one of the other individuals transferred from Northpoint Training Center to Eastern Kentucky Correctional Complex in the early morning of April 30, 2021, was a white individual with long hair down to the middle of his back. Notably, his hair was not cut, nor was it searched for contraband.

49. In the days and weeks following the forcible cutting of Mr. Thurman's hair, he filed several Open Records Act requests, attempting to obtain the video of his dreadlocks being cut. Each request and subsequent appeal was denied based on the claim that such a recording did not exist—notwithstanding the fact that Mr. Thurman was present and spoke directly to the video camera in the early morning hours of April 30, 2021, when his hair was forcibly cut.

50. Only following a February 3, 2021, Open Records Act request filed by Mr. Thurman's undersigned counsel was this video recording made available. That video depicts the events described in paragraphs 42-44 herein.

*Mr. Thurman's Exhaustion of Administrative Remedies*

51. Upon his arrival at Eastern Kentucky Correctional Center, Mr. Thurman appealed his classification and transfer.

52. Because institutional transfers are considered by KY DOC to be non-grievable, i.e., unable to be grieved through the process laid out in CPP 14.6, on May 4, 2021, Mr. Thurman filed a classification appeal.

53. On May 5, 2021, Deputy Warden Shawn McKenzie at Northpoint Training Center denied Mr. Thurman's appeal and concurred with the Classification Committee's actions.

54. Mr. Thurman appealed this decision to the Classification Branch on May 10, 2021.

55. On June 21, 2021, Mr. Thurman received a response from Allen Long, Justice Program Administrator, in the DOC main office in Frankfort, indicating that he "reviewed the situation and concur[s] with the decision of the warden."

56. Mr. Thurman also wrote a letter to the DOC Ombudsman, John Dunn, to raise concerns about his transfer and the forcible cutting of his hair.

57. In a reply dated June 18, 2021, Mr. Dunn responded to Mr. Thurman that, "[t]here is not any evidence at this time for retaliation on the part of Northpoint Training Center in your transfer."

58. Mr. Thurman responded on June 22, 2021, indicating his disagreement with Mr. Dunn's conclusion.

59. Mr. Thurman also wrote to Defendant Crews seeking redress and explanation for his transfer and forcible hair cutting.[1]

60. In a letter dated July 8, 2021, an employee in Defendant Crews' office advised Mr. Thurman that Defendant Crews was investigating the events of April 30, 2021.

61. To date, Defendant Crews' office has not provided any response to Mr. Thurman regarding the results of her investigation.

62. Based on DOC's response to an Open Records Act request filed by Mr. Thurman's undersigned counsel, it appears that Defendant Crews' investigation remains, to date, open and incomplete.

63. Mr. Thurman has exhausted all administrative remedies available to him to address, internally within DOC, his transfer and the forcible cutting of his hair.

---

[1] Mr. Thurman's letter to Defendant Crews was dated and mailed May 3, 2021; when he later inquired with her office whether they'd received the letter, he learned that they had not, and he mailed another copy of the May 3 letter on June 28, 2021.

*The Need for Injunctive Relief*

64.     Defendant Adams' "Searchable Hair" Policy was issued the same day he received an email from the DOC Ombudsman interpreting litigation challenging Ohio's searchable hair policy that was then before the Sixth Circuit.

65.     The DOC Ombudsman's guidance lacked detail and specificity, and neglected to provide guidance to prison administrators concerning how and under what circumstances they were to search an incarcerated person's hair, rather than forcibly cut it.

66.     This lack of guidance and detail led directly to the forcible cutting of Mr. Thurman's hair, without any prison officials making any attempt to search his hair and without consideration for any sincerely held religious belief.

67.     Because the guidance from the central DOC office led directly to Defendant Adams' policy and the forcible cutting of Mr. Thurman's hair, there remains a threat of future forcible cutting like Mr. Thurman experienced. Injunctive relief is necessary to prevent the Department of Corrections or any of its agents from decreeing or enforcing a policy like Defendant Adams' "Searchable Hair" Policy in the manner it was enforced against Mr. Thurman.

## CLAIMS FOR RELIEF

### COUNT I – Religious Land Use and Institutionalized Persons Act (RLUIPA)

68.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 67.

69.     By forcibly cutting his dreadlocked hair, Defendants substantially burdened Plaintiff's religious exercise of his sincerely held religious belief, i.e., wearing his hair in dreadlocks pursuant to the teachings and tenets of Rastafarianism.

70.     Forcibly cutting his dreadlocked hair was not the least restrictive means of furthering a compelling governmental interest, because prison officials did not attempt to search Mr. Thurman's hair before cutting it, and as demonstrated by the fact that Mr. Thurman's cut dreadlocks were placed in a bag and transferred with the rest of his property to Eastern Kentucky Correctional Center. Had prison officials attempted to search Mr. Thurman's hair for contraband items, they would have easily been able to do so, as his dreadlocks were short and not thick.

71.     In forcibly cutting his dreadlocked hair without attempting to utilize any of the available less restrictive means to satisfy the prison's security interest, prison officials violated Mr. Thurman's rights under the Religious Land Use and Institutionalized Person Act.

<u>COUNT II – Kentucky Religious Freedom Restoration Act (KRFRA)</u>

72.      Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 67.

73.     By forcibly cutting his dreadlocked hair, Defendants substantially burdened Mr. Thurman's religious exercise that was motivated by a sincerely held religious belief i.e., wearing his hair in dreadlocks pursuant to the teachings and tenets of Rastafarianism.

74.     Forcibly cutting his dreadlocked hair was not the least restrictive means of furthering a compelling governmental interest, because prison officials did not attempt to search Mr. Thurman's hair before cutting it, and as demonstrated by the fact that Mr. Thurman's cut dreadlocks were placed in a bag and transferred with the rest of his property to Eastern Kentucky Correctional Center. Had prison officials attempted to search Mr. Thurman's hair for contraband items, they would have easily been able to do so, as his dreadlocks were short and not thick.

75.     In forcibly cutting his dreadlocked hair without attempting to utilize any of the available less restrictive means to satisfy the prison's security interest, prison officials violated Mr. Thurman's rights under Kentucky's Religious Freedom Restoration Act.

<u>COUNT III – First Amendment – Retaliation</u>

76.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 67.

77.     Defendants retaliated against Plaintiff for his exercise of his First Amendment rights, i.e., his rights to free speech and petition for redress, by arranging without his knowledge for Mr. Thurman to be transferred to another facility, and forcibly cutting his hair during the transfer process.

78.     Defendants' actions were retaliation for Mr. Thurman's filing of Grievance #21-55G, challenging the "Searchable Hair" policy announced dated February 23, 2021, and Grievance #21-86, challenging the prison canteen's removal of certain products used by African American people for the care of natural hairstyles like Mr. Thurman's dreadlocks, and his appeals of each of those grievances. Moreover, Defendant Cochran initiated the transfer process one day after she issued her review of Grievance #21-55G, which came just months after Defendants had denied Mr. Thurman's requested transfer to help establish the grievance process at a newly-opened DOC facility.

79.     Because transfers are not able to be grieved pursuant to KY DOC CPP 14.6, Mr. Thurman filed appeals regarding the classification, all of which were denied. Mr. Thurman also requested that Defendant Crews open an investigation into the forcible cutting of his dreadlocks on April 30, 2021. This investigation was opened several months later and remains open and incomplete to date. And because he was transferred to EKCC immediately after his hair was

forcibly cut, Mr. Thurman was therefore unable to file a grievance at Northpoint Training Center directly related to the forcible hair cutting. As such, Mr. Thurman has exhausted all available administrative remedies as required by the Prison Law Reform Act.

## PRAYER FOR RELIEF

Plaintiff respectfully asks this Court to enter judgment against Defendants and to provide the following relief:

1. A permanent injunction to prohibit Defendants and their agents from forcibly cutting incarcerated individuals' hair without first relying on less restrictive means such as searching individuals' hair;

2. A declaration that the "Searchable Hair" policy, as applied against Plaintiff, was unconstitutional and a violation of the Religious Land Use and Institutionalized Persons Act and Kentucky's Religious Freedom Restoration Act;

3. A declaration that the forcible cutting of Plaintiff's hair was an unconstitutional retaliatory action taken against him because of his protected First Amendment activities, i.e., filing grievances within the prison against the hair policy;

4. An award of monetary and compensatory damages to Plaintiff for the harm caused to him by Defendants;

5. An award of costs and expenses in this action, including reasonable attorneys' fees, in accordance with 42 U.S.C. § 1988;

6. Any other relief that the Court deems equitable and just in this case.

## JURY DEMAND

Plaintiff demands a trial by jury of all triable issues, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Date:   April 29, 2022

Respectfully Submitted,

/s/ Heather Gatnarek
Heather Gatnarek
Corey Shapiro
Kaili Moss*
ACLU OF KENTUCKY FOUNDATION
325 W. Main St. Suite 2210
Louisville, KY 40202
(502) 581-9746
heather@aclu-ky.org
corey@aclu-ky.org
kaili@aclu-ky.org

*Counsel for Plaintiff*

*pro hac vice motion forthcoming*